UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: SEP 2 9 2018

| | |
|---|---|
| Terrance Tears, | |
| Plaintiff, | 17 Civ. 9793 (AJN) |
| —v— | MEMORANDUM OPINION & ORDER |
| Boston Scientific Corporation, | |
| Defendant. | |

ALISON J. NATHAN, District Judge:

This case arises from Plaintiff Terrance Tears' 2002 implantation with the Greenfield Filter, a vena cava filter manufactured by Defendant Boston Scientific Corporation ("BSC"). Tears seeks compensatory and punitive damages from BSC for alleged negligence, strict products liability, breach of express and implied warranties, fraudulent misrepresentation and concealment, negligent misrepresentation, and violation of New York General Business Law ("GBL") Sections 349 and 350. Before the Court is BSC's motion to dismiss the complaint in its entirety for failure to state a claim upon which relief can be granted. For the reasons provided below, BSC's motion to dismiss is GRANTED in full with prejudice.

## I.     BACKGROUND

The Court takes the following facts from Tears' complaint, from the documents incorporated by reference therein, and from the additional materials appended to BSC's filing.[1]

---

[1] In addition to the complaint, BSC attached the following exhibits to the Declaration of Angela R. Vicari in Support of BSC's Motion to Dismiss: (1) Greenfield Inferior Vena Cava Filter, Titanium Model, Directions for Use, operative in 2002; (2) Greenfield Inferior Vena Cava Filter, Stainless Steel Model, Directions for Use, operative in 2002; (3) a May 16, 2014 Safety Communication issued by the Food and Drug Administration, titled "Removing Retrievable Inferior Vena Cava Filters: FDA Safety Communications," (4) an order in *Kendall v. Boston Scientific Corporation*, No. 6:17-cv-1888-Orl-37GJK (M.D. Fla. Dec. 6, 2017), (5) an order in *Douse v. Boston Scientific Corporation*, No. 2:17-cv-599-FtM- 38MRM (M.D. Fla. Dec. 18, 2017), (6) the product brochure for the Greenfield

*See Helprin v. Harcourt, Inc.*, 277 F. Supp. 2d 327, 330 (S.D.N.Y. 2003) ("While the court may not consider matters outside the pleadings, it may consider documents…incorporated by reference, documents that are integral to the plaintiff's claims, even if not explicitly incorporated by reference, and matters of which judicial notice may be taken.") (internal citations omitted).

The inferior vena cava ("IVC") is a "vein that returns blood to the heart from the lower extremities." Compl. ¶ 29. Blood clots can travel through the IVC from the leg or pelvis into the lungs, causing pulmonary embolism, a potentially life threatening condition. To mitigate this risk, individuals susceptible to clotting are often treated with anticoagulants. For individuals "who are at high risk" of clotting "or for whom anticoagulants are contraindicated, doctors may recommend implantation of an IVC filter." *Id.* ¶ 31. An IVC filter is a medical device that is inserted into the IVC to trap and filter clots from the lower extremities before they reach the lungs. There are two kinds of IVC filters currently on the market: permanent IVC filters, and retrievable IVC filters. Defendant BSC is the manufacturer of the Greenfield IVC Filter, a metal filter designed for permanent implantation "to prevent, among other things, recurrent pulmonary embolism via placement in the vena cava." *Id.* ¶ 35-36.

On or about October 30, 2002, Tears underwent a surgical implantation of the Greenfield Filter following his hospitalization for "pulmonary embolism related issues." *Id.* ¶ 60. The Filter was implanted in his "right femoral vein." *Id.* at 62. In 2015, Tears "began experiencing pains and problems in his chest region," which can be caused by "malfunctioning IVC filters." *Id.* at 65-66. On January 15, 2016, an abdominal scan revealed that Tears' IVC filter was located

---

Inferior Vena Cava Filter, and (7) a copy of the webpage for the Greenfield Inferior Vena Cava Filter. *See* Dkt. No. 6. The Complaint explicitly references and relies on the Greenfield Filter's directions for use, the 2014 Safety Communication, and the webpage. *See* Compl. ¶¶ 49-53, 67, 74, 127-133, 142-148, 178-184, 195-201. The two remaining exhibits are publicly filed court orders. *See Kavowras v. New York Times Co.*, 328 F.3d 50, 57 (2d. Cir. 2003) ("Judicial notice may be taken of public filings."). These exhibits are therefore considered to the extent relevant in deciding this motion.

at the level of his L3-L4 vertebrae. On October 11, 2017, Tears filed the instant suit against BSC in the Supreme Court of New York, County of New York alleging that the Greenfield Filter is "unreasonably dangerous" and "faulty." *Id.* ¶¶ 1, 3. According to the complaint, Tears suffers "constant pains in the abdominal region" and is "at risk of suffering from serious health complication[s]," including "the risk of the filter migrating to the other parts of the vena cava, heart, lungs or other organs" as a result of the filter's defect. *Id.* ¶ 76. The complaint further alleges that BSC "knew its IVC filters were defective in design" and "failed to disclose to physicians, patients, or [to Tears]" the risks associated with permanent implantation. *Id.* ¶ 69-70.

On December 14, 2017, BSC filed a notice of removal to this Court. Dkt. No. 1. On December 21, 2017, BSC filed a motion to dismiss Tears' Complaint in its entirety. Dkt. No. 5. In response to an Order from the Court, Tears filed a letter on January 18, 2018, announcing its intention to rely on its pleadings rather than take the opportunity to amend. Dkt. No. 14. Tears filed an opposition to the motion to dismiss on January 22, 2018, Dkt. No. 16, and BSC filed its reply on January 29, 2018, Dkt. No. 17. The December 21, 2017 motion to dismiss now before the Court is therefore fully briefed.

## II.     LEGAL STANDARD

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts the allegations in the Complaint as true and draws all reasonable inferences in favor of the non-moving party. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). To survive a motion to dismiss, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009). In other words, "the complaint's factual allegations must be enough to raise a right to relief above the speculative level, i.e., enough to make the claim plausible." *Arista Records, LLC, v. Doe 3*, 604 F.3d 110,120 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 555) (internal citations omitted). "Threadbare recital of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Generally, only "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint" may be considered in assessing whether a claim is sufficient to survive a Rule 12(b)(6) motion. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). However, "when a plaintiff chooses not to attach to the complaint or incorporate by reference a document upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration." *International Audiotext Network, Inc. v. Americal Tel. and Tel Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991) (internal quotation marks omitted).

## III. DISCUSSION

### A. Tears' Alleged Injury

As a preliminary matter, BSC argues that Tears has not adequately alleged an injury caused by the Greenfield Filter, and therefore that the complaint must be dismissed in full. *See* Dkt. No. 7 at 6-8. According to BSC, Tears' injury allegations are either "(i)conclusory allegations and injuries not alleged to be caused by a defect in Plaintiff's Greenfield filter, [or] (ii) injuries that Plaintiff claims can be caused by IFC filters generally or as to which he is at risk, absent any allegation that he himself has experienced such injury." *Id.* at 6. It is true that many statements in the complaint concerning Tears' injuries are nothing more than conclusory

4

statements, devoid of specific facts. *See, e.g.*, Compl. ¶ 77 ("As a direct and proximate result of the wrongful acts and omissions of Defendant, Plaintiff suffered severe injuries, including but not limited to economic damages, severe permanent injuries, emotional distress, psychological trauma of living with a defective product implanted in Plaintiff's body."). In addition, a risk of future harm is "insufficient to impose liability against a defendant in a tort context." *Perez v. Braun Medical, Inc.*, No. 17-cv-8512 (LLS), 2018 WL 2316334 (S.D.N.Y. May 9, 2018) (quoting *Caronia v. Philip Morris USA, Inc.*, 22 N.Y.3d 439, 446, 5 N.E.3d 11, 14, 982 N.Y.S.2d 40, 43 (N.Y. 2013)).

Nevertheless, in deciding a motion to dismiss, the Court must "construe the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *McGarry v. Pallito*, 687 F.3d 505, 510 (2d Cir. 2012) (internal quotation marks omitted). Tears states specifically (1) that the Greenfield Filter was implanted in his right femoral vein; (2) that he experienced stomach pain associated with filter malfunction; (3) that a scan of his stomach revealed the filter at the level of his L3-L4 vertebrae, and (4) that he continues to experience stomach pain. Compl. ¶¶ 62-66, 76. Taken together, these allegations permit a reasonable inference that Tears' filter has migrated, causing pain. Though the complaint is not a model of clarity, the allegations related to Tears' injury are not so vague as to deprive BSC of fair notice of the claims against it.

## B. Negligence and Strict Products Liability Claims

Counts I-IV of the complaint rely on theories of negligence and strict liability related to the design, manufacture, or marketing of the Greenfield Filter. *See* Compl. ¶¶ 80-138. Tears pleads three alternate theories of products liability: design defect, manufacturing defect, and failure to warn. Under New York law, which applies in this diversity action, negligence claims

under these three theories are "functionally equivalent" to their strict liability counterparts.[2]

*Oden v. Boston Scientific Corp.*, --- F.Supp.3d ---, 2018 WL 3102534 *4 (E.D.N.Y. June 4,

2018); *see also Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 83 (S.D.N.Y. 2001)

("Courts have noted that, for the purposes of analyzing a design defect claim, the theories of

strict liability and negligence are virtually identical."); *Rosen v. St. Jude Medical, Inc.*, 41 F.

Supp. 3d 170, 182 (N.D.N.Y. 2014) ("Under New York law, to state a claim for manufacturing

defect under theories of strict liability or negligence, the plaintiff must allege that (1) the product

was defective due to an error in the manufacturing process and (2) the defect was the proximate

cause of plaintiff's injury.") (internal quotation marks omitted); *Estrada v. Berkel Inc.*, 789

N.Y.S.2d 172 (N.Y. App. Div. 2005) ("Where liability is predicated on a failure to warn, New

York views negligence and strict liability claims as equivalent.") (quoting *Martin v. Hacker*, 628

N.E.2d 1308, n.1, (N.Y. 1993). The Court will therefore consider Tears' negligence and strict

products liability claims together.

### 1. Design Defect

A defective design claim is premised on a manufacturer's failure to properly design a

product, resulting in a product that is "unreasonably dangerous for its intended use" or "whose

utility does not outweigh the danger inherent in its introduction into the stream of commerce."

---

[2] In 2002, the Second Circuit described the "degree of overlap between negligence and strict liability for design defects" as "unsettled" because the New York Court of Appeals had not ruled directly on the issue. *Jarvis v. Ford Motor Co.*, 283 F.3d 33, 62 (2d Cir. 2002). However, in recent years, "New York courts have treated the differences between negligence and strict liability as inconsequential." *Almonte v. Averna Vision & Robotics, Inc.*, 128 F.Supp.3d 729, 754 n.20 (W.D.N.Y. 2015) (quoting *Cavanagh v. Ford Motor Co.*, No. 13–CV–4584 JS WDW, 2014 WL 2048571, at *5 (E.D.N.Y. May 19, 2014); *see also Rupolo v. Oshkosh Truck Corp.*, 749 F.Supp.2d 31, 43 n.4 (E.D.N.Y.2010) ("In a design defect case, there is almost no difference between a prima facie case in negligence and one in strict liability.") (quoting *Searle v. Suburban Propane Div. of Quantum Chem. Corp.*, 700 N.Y.S.2d 588, 591 (2000)). In any case, even if the standards did differ meaningfully, the elements of strict liability design defect would be included within the required elements for negligent design, so where a strict liability claim is dismissed so too must a negligence claim based on the same defect. *Kosmynska v. Polairis Industries, Inc.*, 462 F.3d 74, 86 (2d Cir. 2006) (holding that a manufacturer whose defective product causes injury cannot be held liable under a negligence theory if a jury finds for the defense on a strict liability claim for the same product).

*Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 107 (N.Y. 1983). To establish a prima facie case that a product was defectively designed, a plaintiff must plead sufficient facts to show that: "(1) the product as designed posed a substantial likelihood of harm; (2) it was feasible to design the product in a safer manner; and (3) the defective design was a substantial factor is causing the plaintiff's injury." *Colon ex rel. Molina*, 195 F.Supp.2d at 83.

Here, Tears has failed to allege with sufficient specificity *how* the design of the Greenfield Filter was defective. *See Bertini v. Smith & Nephew*, No. 13-cv-0079 (BMV), 2013 WL 6332684 (E.D.N.Y. July 15, 2013) ("A design defect claim is subject to dismissal where plaintiff fails to plead facts identifying how the device is defectively designed or the existence of a feasible alternative design.") (citing *Reed v. Pfizer*, 839 F.Supp.2d 571, 571 (E.D.N.Y. 2012)). Though the complaint states that the filter "was defective and not reasonably safe due to its improper, inadequate, and defective design," it fails to identify any specific problem or defective component. Compl. ¶ 92. Without more, the allegations that the Greenfield Filter was defective in design and unreasonably dangerous to consumers are "legal conclusions...not entitled to any assumption of truth." *Bertini*, 2013 WL 6332684 at *2. It is not enough to point to the risks associated with permanent IVC filters. *See Reed*, 839 F.Supp.2d at 577-578 (dismissing design defect claim where complaint "plead the legal conclusion" that the risks of using a prescription drug outweighed the benefits instead of "facts identifying" the drug's design defect); *Goldin v. Smith & Nephew, Inc.*, No. 12-cv-9217(JPO), 2013 WL 1759575 (S.D.N.Y. Apr. 24, 2013) at *4 (dismissing design defect claim where plaintiff "state[d] that the product poses a risk of harm

because of its propensity to dislocate, but d[id] not identify any particular problem in the design of the product").

Moreover, the complaint does not contain sufficient factual allegations to suggest the existence of a feasible alternative design. Tears points to the retrievable IVC filter as a safer alternative to filters that are permanently implanted, like the Greenfield Filter. Compl. ¶ 34 ("Concerns over long-term complications of permanent filters…has led to the development of temporary, retrievable filters."). However, Tears "cannot satisfy his burden to propose a feasible alternative design by proposing that an entirely different product could have been used." *Hilare v. DeWalt Indus. Tool Co.*, 54 F. Supp. 3d 223, (E.D.N.Y. 2014) (holding that a trap saw is not a feasible alternative design for a table saw because they are different products). The Greenfield Filter, by Tears' own admission, is designed to be a permanent IVC filter, and the complaint failed to allege the existence of a safer design for a permanent IVC filter. Because Tears has not pled sufficient facts as to the first two elements of a design defect claim, the Court need not consider the element of causation. The design defect claim is therefore dismissed.

### 2. Manufacturing Defect

Unlike a design defect claim, a manufacturing defect claim is based on an allegation that the specific product that caused plaintiff's injury was not manufactured as designed. To successfully plead a manufacturing defect claim, the complaint must allege both "that a specific product unit was defective as a result of some mishap in the manufacturing process itself, improper workmanship, or because defective materials were used in construction," and "that the defect was the cause of plaintiff's injury." *Colon ex rel. Molina*, 199 F.Supp.2d 53, 85 (S.D.N.Y. 2001) (quotation marks and citation omitted). "[A] claim devoid of allegations that a particular unit differed when compared to others in the same product line will be dismissed."

*Guariglia v. Procter & Gamble Co.*, No. 2:15-cv-04307(ADS), 2018 WL 1335356, at *5

(E.D.N.Y. Mar. 14, 2018). Where, as here, the product itself is not available for inspection, a

plaintiff may be able to prove a manufacturing defect based on circumstantial evidence. *See*

*Speller ex rel. Miller v. Sears, Roebuck & Co.*, 100 N.Y.2d 38, 41 (2003). If the plaintiff is

unable to identify a specific flaw, he must instead "prove that the product did not perform as

intended and exclude all other causes for the product's failure that are not attributable to

defendants." *Id.*

 Tears' manufacturing defect claim fails because he fails to plead facts alleging that the

Greenfield Filter with which he was implanted is defective as compared to other Greenfield

Filters, or alternatively to exclude all other causes of the device's migration. The complaint

references the filter's "manufacturing defects," and asserts that the filter "contained a condition

or conditions, which Defendant did not intend." Compl. ¶¶ 106-111. This vague assertion is

utterly devoid of facts that would allow the Court to draw a reasonable inference that the filter

suffered from a manufacturing defect. *See Goldin*, 2013 WL 1759575 at *3 (dismissing

manufacturing defect claim where the complaint failed to allege any facts about the

manufacturing process). In the absence of facts identifying the specific manufacturing defect,

Tears would need to allege facts suggesting that no cause outside of BSC's control could explain

the flawed performance. He has not done so here. Though the complaint does suggest that the

implantation procedure itself was not a cause of Tears' injury, Compl. ¶ 109, it does not allege

that "this otherwise adequately designed product must have suffered from a manufacturing

defect" in order for migration to occur. *Goldin*, 2013 WK 1759575 at *3. On the contrary, the

complaint alleges numerous times that a substantial risk associated with the permanent IVC

filters generally and the Greenfield Filter specifically is "device migration." *See* Compl. ¶¶ 48, 57, 59, 66, 67, 70. As a result, the manufacturing defect claim must be dismissed.

### 3. Failure to Warn

A third type of products liability claim relies on an allegation that "the manufacturer failed to provide adequate warnings regarding the risks and dangers associated with the use, or foreseeable misuse, of its product." *Sorto-Romero v. Delta Int'l Mach. Corp.*, No. 05-cv-5172(SJF), 2007 WL 2816191, at *11 (E.D.N.Y. Sept. 24, 2007) (citing *Urena v. Biro Mfg. Co.*, 114 F.3d 359, 365-66 (2d Cir. 1997)). "To prevail on a failure to warn claim, a plaintiff must prove (1) a manufacturer has a duty to warn (2) against dangers resulting from foreseeable uses about which it knew or should have known, and (3) that failure to do so was the proximate cause of the harm." *State Farm Fire & Cas. Co. v. Nutone, Inc.*, 426 Fed. App'x. 8, 10 (2d Cir. 2011) (summary order). When the product at issue is a medical device, the manufacturer's duty to warn applies to the physician as a "learned intermediary" rather than to the patient himself. *Banker v. Hoehn*, 718 N.Y.S.2d 438, 440 (App. Div. 2000) ("[T]he manufacturer of the medical device satisfies its duty to warn of potential adverse effects when it adequately warns medical professionals who use the device in the treatment of patients."). A plaintiff will not succeed on a failure to warn cause of action absent "pro[of] that the product did not contain adequate warnings." *Mulhall v. Hannafin*, 45 A.D.3d 55, 841 (N.Y. App. Div. 2007). Thus, on a Rule 12(b)(6) motion, such a claim "is appropriately dismissed if a plaintiff does not plead facts indicating how the provided warnings were inadequate." *Reed*, 839 F. Supp. at 575.

To support its failure to warn claim, Tears alleges that the Greenfield Filter "was unaccompanied by appropriate and adequate warning regarding the risk of severe and permanents injuries associated with its use, including…the migration of the filter to other parts

of the vena cava," and that "the warning given did not accurately reflect the risk, incidence, symptoms, scope or severity of such injuries to the consumer." Compl. ¶ 118. However, the product brochure, the webpage, and the DFU for the Greenfield Filter all contain warnings regarding the possibility of filter migration. *See* Dkt. No. 6, Ex. G at 1-2 (Brochure); *id.*, Ex. B at 9 (Titanium DFU); *id.*, Ex. C at 8. (Stainless Steel DFU); *id.*, Ex. H (Greenfield Vena Cava Filter webpage linking to "Indications, Safety, and Warnings"). Indeed, both the brochure and the webpage prominently display a reported rate of filter migration. *See id.* Ex. G at 1 (Brochure*); id.* Ex. H (Greenfield Vena Cava Filter webpage). Of course, such warning may nevertheless be inadequate, but Tears has failed to make any nonconclusory statements suggesting *how* these warnings were not sufficient to put Tears' physician on notice of the risk of filter migration. *See Reed*, 839 F. Supp. 2d at 577 ("Plausibility requires some factual assertions as to how or why the acknowledged warning was inadequate, that is, about what risk of harm or in what way, the acknowledged warning failed to warn.").

Tears' assertion that the Greenfield Filter product brochure and/or DFU contained inadequate warnings in light of the 2014 FDA Safety Communication does not alter the Court's conclusion that he has failed to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The FDA statement was issued over a decade after Tears' implantation in 2002. *See* Dkt. No. 6, Ex. D. Thus, the Court need not consider BSC's argument that the FDA notice regarding risks of long term implantation is only applicable to removable filters. *See* Dkt. No.7 at 3. Regardless of the content of the statement, it cannot support the proposition that BSC knew or should have known of certain risks at the time it created the

product brochure and DFU on which Tears' physician may have relied. The failure to warn claim is therefore dismissed.

### C. Warranty Claims

Counts V-VII of the complaint allege that BSC breached express and implied warranties in the sale of the Greenfield Filter.

#### 1. Breach of Express Warranty

An express warranty is an "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." N.Y.U.C.C. § 2-313(1)(a). A successful breach of express warranty claim requires proof that such an affirmation or promise existed, that it was breached, and that plaintiff detrimentally relied on the warranty. *Horowitz v. Stryker Corp.*, 613 F.Supp.2d 271, 285-86 (E.D.N.Y. 2009). Generalized or vague allegations that defendant made express warranties are insufficient; plaintiff must "plead some affirmative statement of fact that forms the basis of the warranty." *Cowan v. Costco Wholesale Corp.*, No. 15-CV-05552(PKC), 2017 WL 59080 (E.D.N.Y. Jan. 5, 2017) at *5. "Further, a successful breach of warranty claim requires that the product be defective." *Reed*, 839 F.Supp.2d at 578.

Tears' breach of express warranty claim fails to state a claim upon which relief can be granted "for reasons similar to why they did not meet the standard for a failure to warn claim, a design defect claim, and a manufacturing defect claims." *Reed*, 839 F. Supp. 2d at 578-579 (dismissing warranty claims along with products liability claims). The complaint points to several statements by BSC that Tears suggests constitute express warranties: (1) the webpage describes the Greenfield Filter as having "Trusted Performance, Timeless Design," (2) the webpage indicates that the filter has "Proven Stability," "Established Filter Performance," and a

design that "Promotes Clot Lysis," and (3) the brochure states that the filter has "[r]ecurved hooks…design to provide protection against penetration." Compl. ¶¶ 142-146. However, even if these statements are sufficiently specific to create express warranties, Tears fails to plausibly allege that these warranties were breached, i.e. that the product was not as described by BSC. Notably, Tears does not allege that his filter has failed to "promote clot lysis," or that the recurved hooks did not "provide protection against penetrations." Ultimately, the allegations in the complaint are "not sufficient to draw a reasonable inference that [the Greenfield Filter] was defective" or that what BSC "promised was different than what they provided." *Reed*, 839 F. Supp. 2d at 579. The Court therefore need not reach the question of whether the complaint adequately pleads detrimental reliance. Tears' express warranty claim is dismissed.

## 2. Breach of Implied Warranty of Merchantability

"The implied warranty of merchantability is a guarantee by the seller that its goods are fit for the intended purpose for which they are used." *Saratoga Spa & Bath v. Beeche Sys. Corp.*, 656 N.Y.S.2d 787, 789 (N.Y. App. Div. 1997). To state a claim for a breach of the implied warranty of merchantability, plaintiff must allege that the product was defectively designed or manufactured, that the defect existed when the manufacturer delivered the product to the purchaser, and that the defect is the proximate cause of the plaintiff's injury. *See Teixeria v. St. Jude Medical S.C., Inc.*, 193 F.Supp.3d 218, 226 (W.D.N.Y. 2016). The facts required to demonstrate a breach of the implied warranty of merchantability are thus very similar as those needed to support a strict products liability claim. *See Pinello v. Andreas Stihl Ag & Co. KG*, No. 08-cv-00452, 2011 WL 1302223 (N.D.N.Y. Mar. 31, 2011), at * 17 ("Liability under strict products liability and implied warranty theory are essentially the same."). Because Tears has

failed to plead sufficient facts for the Court to infer that the product was defectively designed or manufactured, as discussed above, his implied warranty of merchantability claim must fail.

### 3. Breach of Implied Warranty of Fitness

An implied warranty of fitness is created "when a seller knows or has reason to know the particular purpose for which a buyer requires goods, and also knows or should know that the buyer is relying on his special knowledge." *Catalano v. BMW of North America, LLC*, 167 F.Supp.3d 540, 558 (S.D.N.Y 2016) (quoting *Abraham v. Volkswagen of America, Inc.*, 795 F.2d 238, 249 (2d Cir. 1986)). Unlike the implied warranty of merchantability, an implied warranty of fitness does not exist by default. *See id.* (noting that "the implied warranty of fitness for a particular purpose "does not arise in every consumer sale"). If "the particular purpose for which goods are to be used coincides with their general function use, [the] implied warranty of fitness for a particular purpose merges with the implied warranty of merchantability." *APS Technology Inc. v. Brant Oilfield Management & Sales Inc.*, No. 13-cv-6500(LTS), 2015 WL 5707161 (S.D.N.Y. 2014) at *7 (quoting *Beech Aircraft Corp. v. Flexible Tubing Corp.*, 270 F. Supp. 548, 561–62 (D. Conn. 1967) (alteration in original).

Here, Tears alleges no particular purpose that differs from the general purpose of users of the Greenfield Filter. On the contrary, the complaint states that BSC warranted that "Greenfield Filters were fit for a particular purpose for which they were being used, implantation into the IVC to treat PE and DVT.[3]" Compl. ¶ 171. Tears' warranty of fitness claim is therefore indistinguishable from his warranty of merchantability claim, which is dismissed for the reasons discussed above. In addition, Tears does not allege that he interacted with BSC directly in any

---

[3] BSC disputes that the Greenfield Filter is designed to treat DVT. *See* Dkt. No. 7 at 4. For purposes of this Order, the Court need not reach the factual dispute: Tears' allegations are taken as true, and the complaint does not allege that treatment of DVT was a purpose particular to Tears. Compl. ¶ 171.

way, nor that BSC was otherwise on notice of his specific purpose in using the Greenfield Filter.

Therefore, even if Tears' purpose were sufficiently particular for an implied warranty of fitness

to apply, the complaint fails to sufficiently plead that BSC was aware of such a purpose. *See*

*Catalano*, 167 F. Supp. 3d at 558 (dismissing implied warranty of fitness claim on the grounds

that the complaint "did not plausibly allege that [defendant] BMW—which is not alleged to have

engaged directly with [buyer] Catalano—could have been aware of any particular purpose for

which Catalano sought to use his vehicle beyond the extent to which it would be aware of any

buyer's purpose for purchasing a BMW vehicle"). In light of this analysis, Tears' claim based

on the breach of implied warranty of fitness is dismissed.

### D. Fraud and Negligent Misrepresentation Claims

Counts VIII-X of the complaint allege that BSC made false or misleading statements

about the risks of the Greenfield Filter which constituted fraudulent misrepresentation, negligent

misrepresentation, and fraudulent concealment. *See* Compl. ¶¶ 175-225. "Allegations of fraud

are subject to a heightened pleading standard" pursuant to Rule 9(b) of the Federal Rules of Civil

Procedure. *Nakahata v. New York-Presbyterian Healthcare System, Inc.*, 723 F.3d 192, 197 (2d

Cir. 2013). Negligent misrepresentation claims, too, must meet the Rule 9(b) standard to survive

a motion to dismiss. *See Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 583

(2d Cir. 2005). Accordingly, Tears' fraud and negligent misrepresentation claims must be pled

"with particularity." F.R.C.P. 9(b). In other words, they must "(1) specify the statements that

the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the

statements were made, and (4) explain why the statements were fraudulent." *Nakahata*, 723 F.3d

at 197 (quoting *Mills v. Polar Molecular Co.*, 12 F.3d 192, 197-98 (2d Cir. 2013). "In addition,

the plaintiff must allege facts that give rise to a *strong* inference of fraudulent intent." *Id.*
(emphasis in original).

### 1. Fraudulent Misrepresentation

To plead a claim for fraudulent misrepresentation, plaintiff must allege facts illustrating
"a misrepresentation or a material omission of fact which was false and known to be false by
defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of
the other party on the misrepresentation or material omission, and injury." *Mandarin Trading
Ltd. v. Wildenstein*, 16 N.Y.3d 173, 178 (N.Y. 2011) (citation omitted); *see also Premium Mortg.
Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (stating the elements of a fraud claim
under New York law).

With respect to the first element, the complaint lists several specific statements from the
Greenfield Filter's webpage and product brochure that Tears alleges are "misrepresentations."
*See* Compl. ¶¶ 178-182. The complaint also alleges that BSC "disseminated false information
regarding the IVC Filters to physicians and plaintiffs," "made its fraudulent misrepresentations
intentionally," and "knew and expected that recipients of that information would rely on the
information." Compl. ¶¶ 187, 189. Lastly, the complaint states that Tears, his physicians, and
the medical community "justifiably and foreseeably relied" on BSC's "representations or
omissions," which "were a cause in fact and a proximate cause" of Tears' injuries. Compl. ¶
191. Notably absent from the complaint is any factual content to support the conclusions that
BSC acted knowingly or that Tears justifiably relied on the alleged misrepresentation. The
complaint thus fails to allege the elements of fraud with the particularity required by Rule 9(b).
*See Oden*, 2018 WL 3102534 at *10 (dismissing fraudulent misrepresentation claim where
complaint "lack[ed] the particularized facts indicating, at the very least, where and when the

statements were made or viewed by Plaintiff or his physicians and why the statements were fraudulent"). The claim based on a theory of fraudulent misrepresentation is therefore dismissed.

## 2. Fraudulent Concealment

To plead a claim of fraudulent concealment, plaintiff must allege sufficient facts to show "(1) a duty to disclose material facts; (2) knowledge of material facts by a party bound to make such disclosures; (3) failure to discharge a duty to disclose; (4) scienter; (5) reliance; and (6) damages." *De Sole v. Knoedler Gallery, LLC*, 974 F. Supp. 2d 274, 314 (S.D.N.Y. 2013). A duty to disclose may arise "where the parties enjoy a fiduciary relationship" or "where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006) (quoting *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, N.A.*, 731 F.2d 112, 123 (2d Cir.1984). For superior knowledge to give rise to a duty to disclose, that information must be unavailable to the other party by reasonable inquiry, and the party in possession must know that the other party is acting on the basis of mistaken knowledge. *Naughtright v. Weiss*, 826 F.Supp.2d 676, 690 (S.D.N.Y. 2011) (citing *Aetna*, 404 F.3d at 582).

The complaint does not suggest that any sort of special relationship existed between Tears and BSC; rather, it alleges that BSC "had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects," Compl. ¶ 207, and that BSC knew that Tears and his physicians "had no way to determine the truth behind Defendant's concealment and omissions," Compl. ¶ 209. These statements merely state the required elements to establish that a duty exists as conclusions without alleging any

particularized facts to support the existence of those same elements. As a result, the fraudulent concealment claim does not meet the heightened pleading standard and must be dismissed.

### 3. Negligent Misrepresentation

"Under New York law, the elements for a negligent misrepresentation claim are that (1) the defendant had a duty, as the result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 21 (2d Cir. 2000). Participating in a business transaction does not, by itself, give rise to a special relationship for purposes of negligent misrepresentation. *See Alley Sports Bar, LLC v. SimplexGrinnell, LP*, 58 F.Supp.3d 280, 294 (W.D.N.Y 2014) (dismissing a negligent representation claim for lack of a special relationship where parties "engaged in an ordinary business transaction over the course of three days"). Rather, the relationship must be "privity-like," fiduciary, or one in which a party either has "unique or specialized expertise" or is "in a position of confidence and trust with the injured party." *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 180 (N.Y. 2011).

The complaint fails to allege any facts to support an inference that such a relationship existed. The claim for negligent misrepresentation is therefore dismissed.

### E. New York GBL Claims

Count XI alleges that BSC's commercial practices violated GBL §§ 349-350. Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce in the furnishing of any service in the state." GBL § 349(a). Section 350 prohibits "[f]alse

advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." GBL § 350. To establish a prima facie case under either section, a plaintiff must allege facts showing that "a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered an injury as a result of the allegedly deceptive act or practice." *Kommer v. Bayer Consumer Health*, 252 F. Supp. 3d 304, 310 (S.D.N.Y. 2017) (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015)). To be "materially misleading," conduct must be "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995). A pleading is insufficient if it does not include facts illustration "a causal connection between some injury to plaintiffs and some misrepresentation made by defendants." *Small v. Lorillard Tobacco Co.*, 252 A.D.2d 1, 15 (1998), *aff'd*, 94 N.Y.2d 43 (1999) (citing *Gershon v. Hertz Corp.*, 215 A.D.2d 202, 203 (App. Div. 1995)).

In support of his GBL claims, Tears alleges that BSC engaged in "consumer-oriented, commercial conduct," in marketing and selling the Greenfield Filter, Compl. ¶ 229, and that BSC's "misrepresentations and concealment of material facts constitute unconscionable commercial practices, deception, fraud, false pretenses, misrepresentation, and/or the knowing concealment, suppression, or omission of material[] facts with the intent that others rely on such concealment, suppression, or omission," Compl. ¶ 231. Even assuming arguendo that the creation of the brochure and the website are considered "consumer-oriented" for purposes of GBL, Tears failed to allege facts connecting his alleged injury with statements made on those platforms. According to the complaint, Tears decided to undergo implantation of the Greenfield Filter "based on advice given" at the hospital where he was receiving treatment for pulmonary

embolism related issues. Compl. ¶ 61. Though Tears does allege that he was given a product brochure "at the time of his implant," he does not suggest that the statements he identifies as misleading in the brochure led to his decision to purchase the filter. Compl. ¶ 196 (acknowledging that the brochure Tears was given "might not be the same brochure" as the one referenced in the complaint). As a result, there is no factual support for Tears' statement that he "used the Greenfield IVC Filter" as "a direct and proximate result of [BSC]'s conduct." Compl. ¶ 235. Accordingly, the claims under GBL §§ 349 and 350 are dismissed.

### F. Punitive Damages Claim

It is well established in New York law that "punitive damages are a remedy and not a separate cause of action" for pleading purposes. *Eldridge v. Rochester City Sch. Dist.*, 968 F. Supp. 2d 546, 563 (W.D.N.Y. 2013); *see also Harrison v. Rubenstein*, No. 2-cv-9356(DAB), 2007 WL 582955, at *21, at *61 (S.D.N.Y. Feb. 26, 2007) ("It is clear that there is no separate cause of action for punitive damages for pleading purposes under New York law.") A claim for punitive damages therefore cannot survive if all other substantive claims in a case have been dismissed. *Rocanova v. Equitable Life Assur. Soc. of U.S.*, 634 N.E.2d 940, 945 (N.Y. 1994) ("A demand or request for punitive damages…possesses no viability absent its attachment to a substantive cause of action."). Because no substantive cause of action survives this motion, Tears' claim for punitive damages is also dismissed.

### G. Request for Leave to Replead

Tears requests leave to amend his Complaint in the event that BSC's motion to dismiss is granted. *See* Dkt. No. 16 at 23-24. Rule 15(a)(2) provides that the Court should "freely give leave" for a party to amend its pleading "when justice so requires." F.R.C.P. 15(a)(2). Nevertheless, leave to amend may properly be denied for "undue delay, bad faith or dilatory

motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d. Cir. 2008).

In this case, the Court concludes that granting a further opportunity to amend would not serve the interests of justice. Per F.R.C.P. 15(a)(1)(B), Tears could have filed an amended complaint as a matter of course within 21 days of service of the motion to dismiss. Nowhere in Tears' opposition brief does he suggest how amendment at this stage "would permit him to cure the deficiencies in the complaint," nor does he give a reason for failing to amend the complaint in response to BSC's motion. *Wilson v. Merrill Lynch & Co., Inc.*, 671 F.3d 120,140 (2d Cir. 2011). Indeed, the Court specifically warned Tears that "declining to amend its pleadings to timely respond to a fully briefed argument" in the motion to dismiss could constitute a waiver of his "right to use the amendment process to cure any defects that have been made apparent by the Defendant's briefing." Dkt. No. 8 (citing *Lorely Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC.*, 797 F.3d 160 (2d Cir. 2015). Tears' request for leave to file an amended complaint is therefore denied.

## IV.   CONCLUSION

For the foregoing reasons, BSC's motion to dismiss Tears' complaint is granted in full. The Clerk of the Court is respectfully directed to close this case. This resolves Dkt. No. 5.

SO ORDERED.

Dated: September 29, 2018
New York, New York

ALISON J. NATHAN
United States District Judge